**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Howard Cochran, | No. CV 11-2538-PHX-RCB (JFM) |
| Plaintiff, | **O R D E R** |
| vs. | |
| Mark Wardian, et al., | |
| Defendants. | |

Plaintiff Howard Cochran brought this civil rights action under 42 U.S.C. § 1983 against Mark Wardian, a City of Phoenix police officer (Doc. 9).[1] Before the Court is Defendant's Motion for Summary Judgment (Doc. 23), which Plaintiff opposes (Doc. 29).

The Court will grant the motion and terminate the action.

**I.   Background**

Plaintiff's claims arose during the course of his arrest on October 29, 2010 (Doc. 9 at 4). Plaintiff alleged that when Defendant arrived on the scene, he ordered Plaintiff to the ground, got on top of Plaintiff, and ground Plaintiff's face into the concrete (id.). Plaintiff claimed that the force used by Defendant was objectively unreasonable and caused him to suffer physical pain (id.).

---

[1] Upon screening, the Court dismissed Michael Hiatt, Robert Ramsey, Christopher Smith, John Doe, Michael Caggiano, and Todd Everett as Defendants (Doc. 10).

Defendant now moves for summary judgment on the grounds that (1) he was not the officer who held Plaintiff on the ground when he was taken into custody and (2) Defendant is entitled to qualified immunity (Doc. 23).

## II.     Summary Judgment Legal Standard

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The movant bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, that it believes demonstrate the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323.

If the movant fails to carry its initial burden of production, the nonmovant need not produce anything. Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Co., Inc., 210 F.3d 1099, 1102-03 (9th Cir. 2000). But if the movant meets its initial responsibility, the burden shifts to the nonmovant to demonstrate the existence of a factual dispute and that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmovant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 250 (1986); see Triton Energy Corp. v. Square D. Co., 68 F.3d 1216, 1221 (9th Cir. 1995). The nonmovant need not establish a material issue of fact conclusively in its favor, First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968); however, it must "come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (internal citation omitted); see Fed. R. Civ. P. 56(c)(1).

At summary judgment, the judge's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. Anderson, 477 U.S. at 249. In its analysis, the court must believe the nonmovant's evidence, and draw all inferences in the nonmovant's favor. Id. at 255. The court need consider only the cited materials, but it may consider any other materials in the record. Fed. R. Civ. P. 56(c)(3).

### III. Factual Contentions

#### A. Defendant

In support of his motion, Defendant submits a separate Statement of Facts (DSOF), which is supported by his declaration and the declaration of Officer Robert Ramsey, Jr. (Doc. 24, Exs. A-B). Defendant sets forth the following factual assertions:

On October 29, 2010, Defendant and Ramsey were on duty when, around 11:00 p.m., they were called to the scene of a shooting incident near 4100 West Camelback Road in Phoenix, Arizona (DSOF ¶ 5). Defendant and Ramsey were provided information that there were three suspects involved in the shooting, and when Ramsey arrived at the scene, he observed three males who matched the suspects' description run north across Camelback Road near an apartment complex driveway (id. ¶ 7).

When other police units arrived on the scene, including Defendant, they all joined Ramsey in surrounding the three males and making contact with them (id. ¶¶ 8-9). Ramsey made contact with the suspect who turned out to be Plaintiff; Ramsey asked him three times to raise his hands in the air, but Plaintiff failed to comply (id. ¶ 10). Ramsey then drew his service weapon and yelled at Plaintiff to raise his hands in the air, but Plaintiff still did not comply (id.). After Ramsey's fifth request, Plaintiff slowly turned around and put both hands in front of his waist (id.). Plaintiff then raised his shirt, pulled a cigarette pack out of his waistband and tossed it through a fence (id.). He proceeded to pull a handgun out of his waistband and drop it through the fence (id.). Ramsey ordered Plaintiff to his knees, and Plaintiff complied, though he did not raise his hands in the air (id.). Ramsey then ordered Plaintiff to lie on his stomach, but Plaintiff did not comply, so Ramsey used his right foot to push Plaintiff forward onto his stomach (id.). Ramsey kept his foot on Plaintiff's back while Officer Michael Feist handcuffed Plaintiff (id.). In order to handcuff Plaintiff, Feist had to grab Plaintiff's arms because they were underneath his body (id.).

Plaintiff was already handcuffed when Defendant made contact with him (id. ¶ 12). Defendant was assigned to transport Plaintiff to the Arizona Department of Corrections (ADC) because Plaintiff was wanted for a parole violation (id.). Before placing Plaintiff into

1    the patrol car, Defendant searched Plaintiff and found his identification (id.). Defendant did
2    not force Plaintiff to the ground, hold him on the ground, get on top of him, or grind his face
3    into the ground (id.). The extent of his contact with Plaintiff was that Defendant handcuffed,
4    transported, and then fingerprinted him (id. ¶ 15).

### B. Plaintiff

In response to DSOF, Plaintiff submits a "Statement Affidavit" (Doc. 29), in which he sets forth his version of the incident as follows:

On October 29, 2010, Plaintiff was walking in the 4100 block of West Camelback Road when numerous Phoenix police cars quickly arrived and surrounded Plaintiff (id. at 2). Plaintiff was nervous because he was carrying a gun and had just been shot at by the person from whom he had taken the gun (id.). Plaintiff turned toward a fence and discarded the gun (id.). He then heard one of the officers tell him to get down on his knees, which he did, and the officer ordered him to get down on his stomach (id.). Plaintiff was kneeling on the asphalt; therefore, he hesitated, and within seconds, he felt someone get on top of him, pull his arms back, and cuff him (id.). This officer, who turned out to be Ramsey, appeared very angry, and he or one of the other officers present continued to grind Plaintiff's face into the asphalt with much force (id.). When Plaintiff tried to pull up, he was pushed back down even harder (id.). Plaintiff was aware that there were other officers next to him; however, he could not see them after he was pulled to his feet (id.). He was then taken to the ADC by Defendant (id.). Plaintiff never ran or resisted arrest, and he was compliant throughout the incident (id. at 3).

## IV. Parties' Contentions

### A. Defendant's Motion

Defendant argues that he was not one of the officers involved in holding Plaintiff on the ground and Plaintiff will have great difficulty proving otherwise (Doc. 23 at 5). Defendant states that Plaintiff mistakenly identified him as the officer who had him on the ground and, therefore, Defendant should be dismissed from the action (id.).

Defendant next argues that even if Plaintiff named the correct police officer, qualified

- 4 -

1 immunity applies because the amount of force used in the circumstances was reasonable (id.
2 at 7-8). Defendant also notes that the only injury Plaintiff alleged was "physical pain" (id.).
3       Finally, Defendant argues that because the officers involved are entitled to qualified
4 immunity, Plaintiff should not be allowed to amend his complaint to name the proper party
5 (id.).[2]

### B.     Plaintiff's Response

In response, Plaintiff contends that there is a serious conflict as to which officer actually handcuffed Plaintiff and, therefore, as to which officer continued to force Plaintiff's face into the ground after he was securely handcuffed (Doc. 29 at 3). Plaintiff submits a copy of the police report for the October 29, 2010 incident, which indicates that Ramsey pushed Plaintiff to the ground and held him while Feist handcuffed him (id., Ex. A). Plaintiff also points to Defendant's affidavit, in which he states that his contact with Plaintiff included handcuffing Plaintiff (id., ref to. Doc. 24, Ex. A, Def. Aff. ¶ 10).

As to his injury, Plaintiff avers that he sustained a bad scar on his face under his right eye (id.). He states that he attempted to obtain copies of photographs taken of him at the ADC both before and after the incident, but his requests were denied (id.; Doc. 30, Pl. Decl.).

Plaintiff states that he does not challenge the officers' decision to detain him; rather, he alleges that after he was handcuffed, his face continued to be pushed into the ground even though he was compliant and did not resist arrest and he did not say anything to the officers during or after the incident (Doc. 29 at 3-4).

### C.     Defendant's Reply

Defendant proffers a supplemental affidavit in which he avers that when he took control of Plaintiff for transport to the ADC, he placed his handcuffs on Plaintiff and removed the handcuffs that belonged to another officer (Doc. 34, Ex. 1, Def. Supp. Aff. ¶ 4). Defendant reasserts his argument that he only encountered Plaintiff after Plaintiff was handcuffed (Doc. 34 at 3). Defendant states that Plaintiff admits that he could not see which

---

[2]In an Order dated February 27, 2013, the Court denied Plaintiff's Motion for Leave to File an Amended Complaint (Doc. 35).

1 officer allegedly ground his face into the asphalt, and Defendant argues that Plaintiff named
2 the wrong party and cannot prove his case against Defendant (id.). Defendant also restates
3 his qualified immunity argument (id. at 3-5).

4 **V.     Analysis**

5 A claim that law enforcement officers used excessive force in the course of an arrest
6 is analyzed under the Fourth Amendment and its "reasonableness" standard. Graham v.
7 Connor, 490 U.S. 386, 395 (1989). The pertinent question in an excessive-force case is
8 whether the use of force was "objectively reasonable in light of the facts and circumstances
9 confronting [the officers], without regard to their underlying intent or motivation." Id. at
10 396-97 (citations omitted).

11 "An officer's liability under section 1983 is predicated on his 'integral participation'
12 in the alleged violation." See Blankenhorn v. City of Orange, 485 F.3d 463, 481 n. 12 (9th
13 Cir. 2007); see also Rizzo v. Goode, 423 U.S. 362, 371-72, 377 (1976) (to support a § 1983
14 claim, a plaintiff must demonstrate that he suffered a specific injury as a result of specific
15 conduct of a defendant and show an affirmative link between the injury and the conduct of
16 that defendant). The fact that Plaintiff could not see exactly who pushed his face into the
17 ground does not necessarily preclude liability for excessive force. See Santos v. Gates, 287
18 F.3d 846, 851 (9th Cir. 2002) (the fact that the plaintiff had no clear recollection of the
19 defendants' exact actions that caused his alleged injuries did not preclude the plaintiff's
20 excessive force claims as a matter of law). For example, in Rutherford v. City of Berkely,
21 the plaintiff could not specifically state which defendants punched or kicked him when he
22 was thrown to the ground and handcuffed. 780 F.2d 1444, 1445, 1448 (9th Cir. 1986)
23 abrogated on other grounds by Graham, 490 U.S. 396. The Ninth Circuit held that in light
24 of evidence that (1) the defendant officers were among the officers who detained and
25 handcuffed the plaintiff and (2) the plaintiff saw the defendant officers around him while he
26 was being beaten, a jury could reasonably infer that the defendant officers were participants
27 in punching and kicking the plaintiff. Rutherford, 780 F.2d at 1448.

28

1     In this case, however, Plaintiff has not controverted Defendant's evidence showing
2 that Ramsey was the officer who used his foot to push Plaintiff onto his stomach, and Feist
3 was the officer who grabbed Plaintiff's arms and handcuffed him (Doc. 24, Ex. B, Ramsey
4 Aff. ¶ 7).  Indeed, Plaintiff's own evidence includes the incident police report, which
5 indicates that Ramsey used his foot to push Plaintiff to his stomach and then held him down
6 as Feist handcuffed him (Doc. 29, Ex. A).  There is no dispute that Defendant was the officer
7 who transported Plaintiff to the ADC (id., Ex. A, Def. Aff. ¶ 7; Doc. 29 at 2).  And Plaintiff
8 fails to controvert Defendant's evidence that Plaintiff was already handcuffed by Feist when
9 Defendant made contact with him for transport (Doc. 24, Ex. A, Def. Aff. ¶ 7). Defendant's
10 supplemental affidavit explains that he changed the handcuffs on Plaintiff when he took
11 control of Plaintiff for transport (Doc. 24, Ex. 1, Def. Supp. Aff. ¶ 4).  Defendant's original
12 affidavit statement that he handcuffed Plaintiff is all that Plaintiff relies on to support a
13 material factual dispute as to Defendant's liability, but this is insufficient to support an
14 inference that Defendant was the officer who allegedly ground Plaintiff's face into the
15 asphalt as he was lying on his stomach.  Cf. Rutherford, 780 F.2d at 1448 (court found
16 sufficient circumstantial evidence that the defendant officers could have participated in
17 beating the plaintiff); see also Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir.
18 2007) ("[c]onclusory, speculative testimony in affidavits and moving papers is insufficient
19 to raise genuine issues of fact and defeat summary judgment").

20     In sum, Defendant's evidence establishes the absence of a material issue of fact that
21 Defendant participated in the alleged constitutional violation, and Plaintiff fails to present
22 any specific facts or evidence to support a material factual dispute regarding Defendant's
23 liability.  Summary judgment will granted on this basis, and the Court need not conduct a
24 reasonableness analysis under Graham or address Defendant's qualified immunity argument.
25 **IT IS ORDERED:**
26     (1) The reference to the Magistrate Judge is **withdrawn** as to Defendant's Motion for
27 Summary Judgment (Doc. 23).
28     (2) Defendant's Motion for Summary Judgment (Doc. 23) is **granted**.

- 7 -

1  (3) The Clerk of Court must enter judgment accordingly and terminate the action.

2  DATED this 15th day of April, 2013.

*Robert C. Broomfield*
Senior United States District Judge